The District Court made two fundamental errors requiring reversal. First, the District Court improperly subordinated the duty to indemnify to the duty to defend. Second, the District Court failed to liberally interpret the Livingston complaint in favor of the duty to defend. On the duty to indemnify, the sum total of the District Court's analysis of the duty to indemnify was this single statement. Because Liberty has no duty to defend the underlying suit, it follows that it has no duty to indemnify. In Peachtree and in the Texas Supreme Court, this Court in Peachtree and the Texas Supreme Court in D.R. Horton, they expressly disapproved this type of reasoning, which essentially says that the duty to indemnify is subordinate or pertinent to the duty to defend. Well, let me stop you there. Let's say we agree with you. My colleagues may want to hear more on that, but I must say I didn't know it worked that way, but you have shown us some case law. What do we do with that? I mean, until there's some result, if we agree on there's no duty to defend, until there's some result that would require an indemnification, I don't know if any ruling is needed, so what do we do if we agree, but disagree on duty to defend? Well, if the Court agrees that the District Court's ruling on duty to indemnify, then obviously summary judgment on the duty to indemnify should be reversed. But we vacated, let's say. Do we send it back? Is there anything further for the District Judge to do at this time? Well, the District Judge, that issue would still be outstanding. But the party settled last spring, correct? Yes, they did. Or, well, more recently than that. But yes, they did. So there'd be no trial to resolve, whether or not… Well, we believe that the settlement and all the circumstances surrounding that resolve the issue of indemnification and require it. I don't know if Liberty would agree with that. They may want to present issues to the District Court to resolve that issue. I mean, that's what's on the table. As to whether new facts somehow in the settlement demonstrated that there were damages from non-pollutants. Exactly. So that would be an issue. We would vacate and remand if we agree on that, but not on duty to defend, which is just one of the possibilities. I'm just laying that one out. And the District Judge would then have to do what with that? Decide the duty to indemnify, because Copart has asserted that Liberty has a duty to indemnify. So that would be on the table. It would be something for you to argue with the District Judge if it goes that way. All right. Why don't you tell us about defense duties? Okay. On the duty to defend, well, the District Court failed to liberally… Well, the District Court concluded that actually facts had shown some damage. Would that then moot any ruling we'd have? Because if there's a duty to defend as to any one portion, there'd be a duty to defend as to all. So if this Court reversed the duty to defend ruling… No, let's say we affirm the duty to defend ruling. Okay. The issue on the table is indemnification. And you persuaded us and we vacate, remand, District Court looks at it, and let's say then the District Court decides there is some indemnification owed. Then that would be a judgment in favor of Copart. Solely as to indemnification. Right. Okay. Well, but what my very learned colleague was raising, and he's probably been satisfied, but now I'm more concerned about it, is the duty to defend based… Is it a one-time decision and based… Let's say we agree with the District Court, which we haven't yet. We have to talk about it and see what anybody thinks. But let's say we do end up agreeing that based on whatever the district judge was looking at at the time, what the complaint looked like, there was no duty to defend. But there does end up being liability under the policy that needs to be indemnified, which is a separate factual determination. The mere fact of dissent certainly doesn't mean it's covered by the policy. So that would have to be sorted out. And so if the judge figures out there is something to identify, does that undermine the earlier duty to defend and then require reimbursement of defense costs? No. It's the duty to defend. If you affirmed the duty to defend ruling, that would settle that issue. So… If you remand it, then… We'll proceed. I expect a friend on the other side would agree with that. So let's start at the beginning then. The Third Amendment complaint, what's the paragraph that most clearly alleges damage from non-pollutants? Well, there are two paragraphs. One is on page 1228 of the Record on Appeal. Coparts actions… I'm sorry, what's the paragraph number? 118. 118. Coparts actions constitute a trespass and continuing trespass by encroachment of water, sediment, and other matter onto plaintiff's property. And there's also in the sixth cause of action, paragraph 89, the allegation that Copart violated the stormwater statute and ordinance by conducting unpermitted and improperly managed land disturbance, clearing and grading activities. And the purpose of that statute is to protect the environment from harm caused by stormwater as a result of improperly conducted and unpermitted land disturbance activities. And that's consistent with the overall pleading where the core of their pleading is that Copart improperly cleared his property and when there's a heavy rain, all the rainwater, stormwater comes rushing down into Tom's Creek and on down to their ponds. But even at 118, all the surrounding paragraphs are, yes, it comes rushing down laden with pollutants. Not all of them say laden with pollutants. In paragraph 54, record on appeal 1218, it says during any significant rain event, water, soil, sediment, and hazardous materials are washed from the Copart property into Tom's Creek, ultimately to the plaintiff's properties. Paragraph 55, the sediment and hazardous materials that flow from defendant's property has dramatically changed the nature of the plaintiff's property. And so with those, those don't say laden with. They say you've got soil, you have water, soil, sediment, and hazardous materials. Well, counsel, we don't, we don't read even complaints, just looking for stray words. It seems to me that one way to look at this, and certainly the way the district judge looked at it, it's a, it's a case about pollution. It's not a case about water erosion or flooding of water. And so, yes, and maybe there's a sentence there that doesn't have the complete picture, but is, and you've given us some. But isn't it accurate to look at the overall section of the complaint? What is it talking about there, regardless of what one particular sentence said? Is at least that the right concept, that you're looking at a complaint and what each paragraph is saying in context of the section of the complaint and whatever else is the context? If that's the right approach, then how do you win under that approach? That's a restrictive approach, and the approach that the court is. Restrictive, why is it restrictive to look at what is being, I mean, you seem to be, I mean, I know you won't like this phrase, but I don't think the right way to read even a complaint is a stray word approach. And so if you have one particular sentence that says something, but in context, it's just a short version of other parts of that same section of the complaint, I wouldn't call that restrictive. Well, I think you also, you do have to look at the entire complaint. And one thing you need to look at is the type of damage that's alleged. And the district court looked specifically to that and appeared to come to the conclusion that there were no allegations of damages that could be caused by non-pollutants. And that just isn't, that isn't true at all. But the exclusion explicitly says whole or in part by. Right. And so nowhere in the complaint does it ever really say this created a flood or this eroded things. It seems to always be the water came with the hazardous material. Well, the water came with the non-hazardous material, and that's one way to read it. It did what? And created cloudy water and aesthetic damage to the plaintiff's properties. That was a very big concern that they had by the time this case had settled. In fact, the summary judgment evidence, I really encourage you to look at it in connection with the duty to indemnify. If you go through and look at that, the case, by the time we, by the time of summary judgment, much less two years later, the case was about muddy water. It was about cloudy water and the diminution in value of the plaintiff's properties based on aesthetic damage. Their evidence, and our summary judgment evidence shows this, is that they had really suffered some blows as to the scientific reliability of their expert. So you maintain that there's a duty of indemnity that's still alive? Absolutely. And what damages are to be indemnified? The settlement, the settlement amount. The settlement amount. Yes. So the stipulation, as I read it, the judgment was entered to dispute was dismissed with prejudice that you had reached a satisfactory resolution of the issues. Right. Well, if a case is settled. I'm sorry? It encompasses either type of resolution. The instrument of, is there an independent agreement about what the terms of the stipulation of dismissal were? As far as how it would impact the indemnity, indemnification? One thing I saw, and of course I may have probably missed it, but it says the stipulation of dismissal reached a satisfactory resolution of the issues. And the question is, but you say the indemnity is still alive, but you can't run on the fact finding of that case because you've dismissed it. Well, so the issue for this case, the coverage case, is there a duty to indemnify? And the way that gets resolved, I think that a lot of the evidence, the evidence that came in and that was developed in the underlying case, is part of that analysis. And the judge, it gets tried. Is there a breach of the insurance policy based on the duty to indemnify based on these facts? Here's the facts. This is how that case went. This is where they were. Sometimes that requires basically retrying that case at some level to some degree. Go back to the question again. Okay, if you're entitled to indemnification, what are the damages exactly? You say of the dismissal. Well, it's the settlement amount that Copart paid. The papers I had said nothing about a settlement amount or anything else. You have a collateral agreement out there or something? Well, so the plaintiffs in Copart. I'm sorry? The underlying plaintiffs, the Livingston plaintiffs in Copart, you know, reached an agreement and settled, and they dismissed that case, and that case is over. But there's still an outstanding issue as to whether Copart is entitled to be indemnified for the amounts that it paid. Are they entitled to indemnification for counsel fees or what are they? The settlement amount, the amount that Copart paid. When you go back to the label of it, what are they? Oh, that's confidential. The amount is confidential under the settlement agreement. Well, I don't think he's concerned about the amount. Okay. He's asking about, you know, the issues in the case insofar as duty to defend is, was it pollution damage? Was it what was causing the damage? So if this goes back to the district judge on the issue of indemnity, they're only going to have to indemnify what the policy covers. And does the settlement, is it, any part of it in our record would say that $100,000, well, an unknown number was paid for this pollution damage, another unknown number was paid for this separate pollution damage? Well, I think the court looks at where, what happened in that case. You really have to look at what was happening in that case. And if you look at the summary judgment here, the summary judgment evidence that Copart put in, it shows that that case was turning into a case about cloudy water and the diminution in value. And so if you're going to look at what the settlement compensation or what the settlement amount was based on, you know, diminution, the parties got appraisals of their property based on cloudy water for several days after a big rainfall from the kale and clay. Well, probably an issue for the district court, and we may see it again. Who knows? But anything else for us, counsel? I think that's it.  We'll hear from you in a few minutes. Thank you. Good morning. May it please the court. Katherine Hanna. I represent Liberty Mutual and Liberty Mutual Fire Insurance Company. And I think what was lost in the entire beginning presentation is this is a case about a junkyard. The foundational, fundamental fact of this case is that Copart stores junked and salvaged automobiles on unpaved lots. Paragraph 56 of the complaint, of the third amended complaint, says, Those cars leak dangerous, hazardous, toxic chemicals into the soil, which is then washed by water. Water is the vehicle here. Water is not the damage. Water is the vehicle by which toxic chemicals in the sediment, in the soil and sediment, is washed into Toms Creek, thus contaminating Toms Creek. This is a quintessential pollution case. And Judge Higginson, you made the point, and it's correct, that this exclusion, the pollution exclusion in the general liability policy, excludes damages caused in whole or in part by pollution. And if you look at the third amended complaint, it is laden with, if I can borrow the underlying plaintiff's language, with pollutants. And, yes, Copart seizes on paragraph 118, where they say other matter. And it is literally sandwiched between paragraphs 117, which says laden with harmful chemicals, paragraphs 119, laden with harmful chemicals, paragraph 120, which I believe, and I'm not looking at it, is the paragraph that talks about the damage. Because we have to look at the damages. No allegations of aesthetic injury from the water just being cloudy and muddy? And in particular, do you have thoughts on their seventh cause of action, the Junkyard Act? I think that, I'm sorry, it sounds like that's two questions. It is two questions. Okay. So the question's about cloudy water. There's no allegation that the cloudy water is not the result of pollutant laden sediment. Excuse me. And I don't think you can take the pollution out of the sediment, given paragraph 56. Some courts, or at least the West Virginia court in, you'll know right away, the Half Court case? Yes. I know the Half Court case. That district court did seem to think the two should be segregated for purposes of application, no? And, yeah, what that court, what the underlying complaint or petition in that case had were exactly the kind of damages you gave a hypothetical on to counsel for Copart, which was erosion. There were erosion control issues. There were issues with detention ponds caused by an excess amount of water. We don't have that here. We only have allegations of contaminated water in Tom's Creek. And I do include the cloudy water in that description. And they've used us, Junkyard Act, because they've never said that was the basis for the duty to defend? They have never said that was the basis for the duty to defend. But, again, I would say the fundamental factual underlayment of this complaint is a junkyard. It leaks chemicals, toxic chemicals, into the soil. And there's simply, there's a long history of insurance carriers from 1971, I believe, saying we just don't want to cover pollution. There's environmental policies for that. But that's not this policy. And if I could address the duty to indemnify. So, certainly, so they are completely independent and separate duties. And I don't believe, let's, I'll entertain the hypothetical, although, of course, I disagree with it. If this court decided that the district court was correct on the duty to defend, but incorrect on the duty to indemnify, and it went back, and there were some covered damages found, I do not think that would affect, I agree with counsel for Copart, that would not affect the duty to defend. That's based, I'm sorry? I didn't hear the last part of what you said. The duty to defend is based solely on the complaint. A later determination of some covered damages could not go back and affect that duty. It's like an amendment to the complaint before there would be any alteration? I mean, what you're saying makes perfect sense. But I'm just wondering what law there is to support that it's a one-time, at least until there's a new complaint, it's a one-time? Well, I don't think, if I understand the question, I don't think they can, I mean, it's done, right? The underlying case is done. It's just a little difficult to mentally think about, because you would also agree with the legal proposition, is if any allegation has no nexus to pollution, then you would have to defend the entire suit. Right, and of course I disagree that there's no nexus to pollution, which is why I think the district court got it right on indemnity as well. In Griffin, the Texas Supreme Court case where they said they're completely separate duties, and if the same, and they stated in the positive, not the negative, if the same reason that precludes a duty to defend also precludes the duty to indemnify, then the court can go ahead and make that determination. And in that case, and I'm sure this Court well knows, we're talking about an auto policy and a drive-by shooting. And the court said there's no coverage under the auto policy because it's not use of an auto. But the district court plainly was at error in reading the basic law of duty to indemnify. Do you agree with that? I think, and I didn't go back to the opinion, I think he may have overstated, so 2009 may have been the time when it changed. It used to be the rule. When D.R. Horton came down, you mean? Correct. When the duty to defend is broader than the duty to indemnify. And D.R. Horton said they're really separate and you have to deal with them separately. And my point is, in this pollution case where all of the damage is. Let me ask you again. Sure. On March the 20th, you filed a Rubin order, basically. This case is subject to being dismissed with prejudice and giving the parties 180 days to finalize a settle agreement. That was a trial that was to begin on April 11th. What was the trial to begin on April 11th? And that's of the underlying matter, the South Carolina matter? Yeah. I am not, I don't know the answer to that question. I do know, what I know is that the case settled. I'm trying to understand what you settled. It's a dismissal of a suit with prejudice, and you say that's a collateral matter. I'm not sure what you're talking about. Right. Well, so I don't think it is a collateral matter, and if I'm misspeaking, I apologize. The case settled, and Copart's counsel is correct, that then if, again. The case settled. What settled? The underlying case of the property owners against Copart settled. Case of, okay. And in answer to one of your questions about that settlement, there was no, and I think I can say this, there was no allocation in that settlement agreement of damages as a result of pollution and damages as a result of any other cause. The plaintiffs and the underlying plaintiffs who had sued Copart maintained through the end, through settlement, that it was a pollution case. Copart has presented evidence to you that I read, extrinsic evidence to that case, that I read as saying, well, it was a weak pollution case. There wasn't a lot of evidence. The tests were minimal. But this is not a, there's not a robustness requirement in our pollution exclusion. If there is pollution that caused the damages, and they are the damages that were alleged through the very end and settlement of that case, it is a pollution case, and it cannot be altered. Just like in Griffin, a drive-by shooting can't become an auto accident. And it would be as if counsel were here saying, but what if, what if they came up with some other theory before trial, that maybe there was a blowout in the car, and that also caused damage. That's outside of anything that was before anybody. That is an imagination of a cause of action. Counsel, though, isn't that really something, are you saying we shouldn't even send them back to the district court? It seems to me what you're talking about, what does the settlement cover, does it raise any possible coverage issues for your client? No, that's in front of us. Isn't that something we send them back to the district court if we agree with you on duty to defend? If, yes. If you determine that there was, that the district court was correct on the duty to defend, but he should not have made the determination on duty to indemnify, then as much as I disagree, I think what happens is then you remand that indemnification to the district court. What do you mean? You said as much as I disagree, we send it back. Don't you agree we have to send it back? Well, I agree that, I disagree that the duty to indemnify was decided prematurely. I think the district court was correct in determining this could never be anything other than a pollution case. And interestingly, the D.R. Horton and the cases Copart cites about the fact that indemnity, you may have indemnity obligations even though you didn't have defense obligations, those are cases, and it's a very common construction defect scenario where someone sues a general contractor, but they don't sue a subcontractor. And the general contractor says, well, it's their fault, and we're therefore covered under their policy as an additional insurer. And the court says, but they're not, this is Pine Oak Builders. They're not named, so we can't look at that on duty to defend, but there might be evidence at trial that they caused the damage. That's not the case here. Again, we know the cause of the, the plaintiffs have only alleged pollution damage. They can't change the whole nature of the case to then say, but maybe there might be something subject to an indemnification. Well, do we know enough about what happened outside this particular case about what other evidence may have been provided, what affidavits may have been provided, what photographs and professional scientific evidence? I mean, you may well be right, and I do worry that if we go too far with this, it would allow manipulation of the coverage because it's most getting off anybody's nose who's involved in the actual litigation whether you have to pay for some of it. So that's a risk. I'm not saying anything like that's happened, but I'm just saying as a matter of law. But I just don't know if we know, if we can say we have the record relevant to this issue. Well, we have the information that Copart chose to submit, right? We have the information that Copart said and counsel discussed about the limitation of expert testimony based on testing. We have evidence that shows that the pollution case may have been weak, which would mean there's no liability. My argument is if there is liability for contamination of Toms Creek, ultimate liability, that has to be based on pollution because as you noted, and I go back to Judge Higginson, this is not a case where someone has changed erosion channels. This is not a case where someone has caused flooding. The case is your junked cars leached toxic chemicals into the soil, which washed into Toms Creek and contaminated it. That is the case, and that's not going to be altered by anything. But the question of identification, I still don't understand your argument. Fundamentally, I don't understand what settled. I don't know why you're entering into a stipulation of dismissal to settle when your basic argument is that the case is over. Well, Liberty Mutual was not a party to that stipulation of dismissal. So my clients were not a party to that stipulation of dismissal. That all happened in the underlying case, and then they came to us and said, and this is outside your record, here's the settlement, now indemnify us. So we still have the dispute about whether or not the settlement, the settlement agreement is covered by the policy. And in my view, we know enough, and we don't need to know what's outside our current record. We know enough because we know this pollution case, this drive-by shooting, will never be not a pollution case. It will never be an auto accident. And I think Griffin applies, and I don't think D.R. Horton or Peachtree apply. And I did look. I looked for cases since D.R. Horton where courts had sort of separated out pollution to find no duty to indemnify. I mean, I'm sorry, to find no duty to defend, but sent it back on duty to indemnify. And I couldn't find any. You weren't a party to the settlement. I assumed it was. In the underlying case, I assume that's your insured. Our insured was a party to the settlement. We were no longer defending that insured. We withdrew our defense after the district court held that we had no duty to defend. So Liberty Mutual was not a party to the settlement agreement. I know what I know about the settlement agreement by virtue of Coparts Council sharing that information with me in the course of seeking indemnification. So one of the cases I found is Nautilus v. Country Oaks, and it is cited in our briefing, though not necessarily for this proposition. And that is a case similar to ours where, and similar to what the district court did here, it said no duty to defend because of the pollution exclusion, therefore no duty to indemnify. So it's certainly not, it's not an unusual determination to make. I think it's more unusual to disaggregate defense and indemnity in a pollution case. All right, Councilwoman. I wanted to, I don't know if you have, I wanted to talk a little bit about the excess policy, if I could. We have the umbrella policy, which also has a pollution exclusion. And Copart has argued that there's a mobile equipment exception to that exclusion. And basically they've done the same thing with that that they've done with the other things. They've taken stray words and said, well, they say there's land grading equipment, bulldozers and the like, on the property. So maybe those leaked. But there's no, again, there's no connection in the complaint that the land, the mobile equipment that was actually performing operations leaked. That's nowhere in the complaint. And in addition, there is what we're calling a junkyard, I don't think we call it that in the briefing, but a proviso that this exception, the mobile equipment exception, doesn't apply if you are operating a site of basically waste material. And I do want to, I want to address it because Copart then says, well, the Waco Court of Appeals in the safe tire case says waste material means unwanted byproducts. And we make money from these cars. We sell salvage. So they're not unwanted. It's not waste. But the Waco Court of Appeals, respectfully, simply got it wrong. And you can see that in Justice Gray's dissent. He's now the Chief Justice of the Waco Court of Appeals. And in his dissent where he points out you shouldn't go to a dictionary definition of waste when you have a definition in the policy. The definition of the policy of waste materials includes material to be recycled, reclaimed, reconditioned, which these cars in the junkyard clearly are. The court in that case, for some reason, went to a dictionary and said waste has to be unwanted. They implied it has to be not profitable. It's simply wrong. I don't think there's anything you could look at that would suggest the Texas Supreme Court would come to that same conclusion. When you look at the vast, the vast amount of case law we have on policy interpretation that says that safe tire conclusion would read the definition of waste out of the policy, and we don't do that. So I certainly wanted to put that before you. If you have no further questions, I will take a seat. You can take it. Thank you. Thank you. So on the indemnity point, there is no record for the indemnity issue at this point. The indemnity issue relies on what happened in the underlying case. We don't have that record. The only burden that COPART had was to demonstrate that there is a possibility that the livings and plaintiffs would not be able to prove that there were pollutants in the water, the possibility that COPART ultimately might have liability just for aesthetic property damage based on cloudy water and no pollutants. If there was a trial, I'm sorry, I interrupted your sentence. No. If there were a trial and whatever, and you would see what the evidence was. We sent it back to the district judge to see what was introduced, some idea of bench trial, jury trial, what the instructions were. Here we're talking about a settlement, and whatever the settlement says was between the two sides of that settlement. There's not really evidence to be looking at. I mean, you may well be right, but I'm trying to think through how this would actually work and what the district judge would look at. And again, without in any way casting aspersions on you or on your client, at least opening up the possibility that settlements could be crafted to try to drag the insurance company back in. And there's not any real fact finder who's done anything. It's a settlement. Do you have case law where we have a procedure such as where we are now? There's been a settlement after a decision by the district, a trial court that eliminated coverage, where you go back in just on the basis of a settlement? A lot of the cases, the major cases that we've cited talk about that issue. I think it's probably addressed in D.L. Horton. It may be discussed in Peachtree. It talks about if a party didn't have an opportunity. Let's say the case went to trial, and none of the evidence at trial resolved the issue for coverage. Well, in the coverage lawsuit, you would try that. You would try whatever is necessary. So if there's been a settlement, it's possible that you would have to basically retry. You would have to try for the first time the Livingston lawsuit. That's what the settlement, that's what the district court would try. Your client, Lopart, simply negotiated a settlement for whatever claims that there may be for which we're not indemnified. We're settling those. Are you settling them on the basis that, well, if we can get indemnification for this, we'll pay you? Well, so for indemnification, that's what the district court would try, and what was the settlement for? I'm sorry. You're sitting there as the insured, and you've got these claims filed against you from the property owners, et cetera. And so you reach a deal with them to say that, well, we won't cut a deal with you, but we want to try to go forward with this indemnification. Is that basically what it amounts to? So the indemnification is just governed by whatever Copart had to pay, and then obviously the limits of the policy. So your client individually settled this case with the property owners, correct? That's the underlying lawsuit. That is correct. Okay. You settled it on the basis that you still had your claims out there for coverage, et cetera, and indemnification. The indemnification is just the coverage for the loss suffered by the property owners, quote, unquote, whatever liability they may be for that. But there's been a ‑‑ so I'm trying to track through what the insured did here, and what you're trying to do is just preserve your ongoing claim, I guess, for indemnification. How do we get that determined? Well, the issue before the district court will be what was the settlement for. I mean, there's not an allocation in the settlement agreement. That is correct. What was the settlement for? I mean, that is what's going to be tried before the district court because there's a settlement. Whatever evidence is necessary for COPAR to demonstrate there was coverage, and obviously Liberty will be like, well, no, there's not coverage. There were pollutants or whatever. It's really getting into that. One of my colleagues thinks you need to answer one more question, and I agree. All right. So from listening to your argument today, is it fair to say the damages that were alleged or possibly settled relate to the phrase cloudy water and aesthetic damage, not flooding, not erosion? You've used the word aesthetic several times. Right. And the allegations, the plaintiffs were very, very concerned about the turbid water in their pond. I'm just asking you, would you agree with that characterization, that the damage that was alleged and that possibly was settled to the extent anyone knows it not water or soil pushing or eroding? Is that correct? Well, certainly soil. I think that, you know, there's water running off of COPAR's elevated property. There's going to be necessarily picking up kaolin clay and other sediment and soil. I mean, there's a certain amount of erosion that's going to happen there for sure in order to end up with cloudy water two miles down the stream in their ponds. Okay. Thank you, counsel. Thank you. All right. We'll be in recess for 10 minutes.